# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ———————————————— | ) | |
| FUTUREGEN COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No. 1:12-cv-00716 (ABJ) |
| | ) | |
| RICHARD D. CARTER, | ) | |
| | ) | |
| Defendant | ) | |
| ————————————————) | | |

## <u>MEMORANDUM OPINION</u>

Plaintiff FutureGen Co. ("FutureGen" or "the company") brings this action against defendant Richard Carter ("Carter") alleging: (1) conversion and civil theft, (2) fraud, (3) fraudulent conversion, (4) constructive fraud, (5) unjust enrichment, (6) breach of fiduciary duty, and (7) constructive trust. Compl. [Dkt. # 1] ¶¶ 43–88. Carter has moved to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and, in the alternative, for forum non conveniens. Def.'s Mot. to Dismiss [Dkt. # 29] ("Def.'s Mot.") at 1, 7. Because the Court concludes that it lacks personal jurisdiction over Carter under the District of Columbia's long-arm statute, D.C. Code § 13-423 (2001), it will grant Carter's motion without reaching a decision on the forum non conveniens argument.[1]

## BACKGROUND

According to the complaint, FutureGen is a capital and asset management company with a principal place of business in Washington, D.C. Compl. ¶ 2. FutureGen also admits in its

---

1    In its opposition, FutureGen did not respond to Carter's forum non conveniens argument. Since the Court is dismissing the action under Fed. R. Civ. P. 12(b)(2), it need not address whether FutureGen conceded this argument by failing to address it.

complaint that Richard Carter lives in Illinois.  *Id*. ¶ 4.  On September 30, 2010, FutureGen's president and CEO, Lawrence Schmidt, who was based in the District of Columbia, offered Carter a position as the company's distressed asset/debt fund manager via electronic mail.  *Id*. ¶¶ 9, 12.  On October 17, 2010, Carter executed his employment agreement with FutureGen, mailed it to Schmidt, and began working.  *Id*. ¶¶ 11, 17.  In its complaint, FutureGen further admits that Carter was employed in and conducted his duties from the company's Chicago office.  *Id*. ¶¶ 5, 10.  But in an attempt to establish personal jurisdiction, the complaint points to three occasions where Carter traveled to the District to conduct company business:  on June 3–5, 2010 and on February 3–5 and July 7–8, 2011.  *Id*. ¶ 7.

With respect to alleged tortious conduct, FutureGen asserts that in November 2011, Carter entered into an unauthorized purchase agreement with Haven Acquisition Management, LLC ("Haven") on behalf of FutureGen and instructed Haven to wire the proceeds of the transaction to his personal bank account in Lake Zurich, Illinois.  *Id*. ¶¶ 23–24.  The company also contends that around the same time period, Carter "embarked on [another] complex scheme to syphon substantial funds from FutureGen."  *Id.* ¶ 33.  According to the complaint, Carter implemented the scheme by creating a sham company, drafting phony and forged contracts between the sham company and FutureGen, and sending the phony contracts to Schmidt to approve the wiring of FutureGen funds to bank accounts controlled by Carter.  *Id*. ¶¶ 34–38.  Carter also allegedly attempted to conceal his fraudulent behavior by creating and using a false email account in the name of the sham company to communicate with Schmidt regarding the phony contracts.  *Id*. ¶ 40.  Lastly, FutureGen alleges that Carter stole money from the company a third time in January 2012 by inflating the price of a debt pool that Haven was selling to FutureGen and instructing Haven to funnel the excess proceeds directly to Carter's Illinois bank

account.  *Id*. ¶ 42.  FutureGen admits in its complaint that Carter engaged in these activities from Illinois.  *Id*. ¶ 10.

On May 3, 2012, FutureGen brought a seven-count action against Carter in this Court seeking compensatory and punitive damages, and other equitable relief.  *Id*. ¶¶ 1, 43–88.  Carter has filed a motion to dismiss on the grounds that the Court lacks personal jurisdiction over him and that the District is not the proper forum for this action.  Def.'s Mot. at 1, 7.  FutureGen maintains that the Court has personal jurisdiction under the District's long-arm statute and that exercise of jurisdiction would satisfy the requirements of due process.  Pl.'s Mem. in Supp. of Opp. to Def.'s Mot. to Dismiss [Dkt. # 31-1] ("Pl.'s Mem.") at 3, 7.

## STANDARD OF REVIEW

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."  *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum.  *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  The plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]"  *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).  However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [the plaintiff] may rest [its]

arguments on the pleadings, 'bolstered by such affidavits and other written materials as [it] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (alteration in original).  Any factual discrepancies should be resolved in favor of the plaintiff.  *Crane*, 894 F.2d at 456.  But the Court need not treat all of the plaintiff's jurisdictional allegations as true.  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  "Instead, the court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *In re Papst Licensing*, 590 F. Supp. 2d at 98 (internal quotation marks and citation omitted).

## ANALYSIS

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d. 1343, 1347 (D.C. Cir. 2000).  It first determines "whether jurisdiction over a party is proper under the applicable local long-arm statute." *United States v. Ferrara,* 54 F.3d. 825, 828 (D.C. Cir. 1995).  If so, it examines "whether [jurisdiction] accords with the demands of due process." *Id.*  Since the Court concludes that it does not have personal jurisdiction over Carter under the District's long-arm statute, it will not engage in the second part of the jurisdictional analysis.

FutureGen asserts that the Court has personal jurisdiction over Carter under sections (a)(3) and (a)(4) of the District's long-arm statute, which provides for jurisdiction for claims arising from the person's:

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia *if* he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

Pl.'s Mem. at 3, citing D.C. Code § 13-423(a)(3)–(4) (2001) (emphasis added).  Both of these sections require that the tortious injury occur within the District.  *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996).  Even if the Court accepts FutureGen's assertion that "the injury suffered by the small company as a result of the Defendant's tortious actions was, and still is, primarily felt in the company's main office," Pl.'s Mem. at 7, it finds that the company has failed to meet the other requirements of either section (a)(3) or (a)(4).

To establish personal jurisdiction under section (a)(3), FutureGen must show that Carter caused the tortious injury at issue in this case by engaging in an act or omission in the District. *See McFarlane*, 74 F.3d at 1300.  FutureGen contends that Carter "caused tortious conduct in the District" because during his three trips to D.C., he attended meetings and conducted company business that allowed him to create an outward appearance of professional responsibility and gain the trust and respect necessary to accomplish his true objective – defrauding the company. Pl.'s Mem. at 4–5.  But while guile and charm may be tools of the confident man's trade, these were not the acts or omissions that caused the injury.  Rather, the acts that gave rise to the injury – the unauthorized purchase agreement and the diversion of money from FutureGen to Carter's bank accounts – occurred in Illinois.[2]  So section (a)(3) is unavailable here.

FutureGen also fails to establish personal jurisdiction under section (a)(4).  Section (a)(4) allows the Court to exercise jurisdiction over a defendant for "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly . . . engages in any other persistent course of conduct . . . in the District of Columbia."

---

2       *See* Exs. A–D to Compl. [Dkt. #1-1] (Allegedly forged Receivables Purchase Agreements instructing FutureGen to wire funds to bank accounts controlled by Carter; communications between Schmidt and the email account allegedly created by Carter in the name of his sham company; Carter's bank account statements; and email correspondence in which Carter allegedly inflated the price of a debt pool that another company was selling to FutureGen and instructed the company to funnel the excess proceeds directly to Carter's Illinois bank account).

D.C. Code § 13-423(a)(4).  The "persistent course of conduct under (a)(4) need not be related to the act that caused the injury; all that is required is some other reasonable connection between the defendant and the forum."  *Crane v. Carr*¸ 814 F.2d 758, 763 (D.C. Cir. 1987) (internal quotation marks and citation omitted).  FutureGen argues that Carter "engaged in a persistent course of conduct directed towards the District of Columbia from the state of Illinois" by (1) mailing an executed employment agreement from Illinois to the District, (2) engaging in daily telephone and e-mail communications with FutureGen's D.C.-based employees, (3) having two telephone conversations with FutureGen's D.C.-based attorney, (4) using "the internet and US mails" to enter into an unauthorized purchase agreement on behalf of the company, and (5) sending phony and forged contracts on three separate occasions to the company's D.C.-based president and CEO.  Pl.'s Mem. at 5–7.

This argument is unpersuasive because section (a)(4) requires that the persistent course of conduct occur *in* the District; directing conduct from another state into the District via telephone, internet, and mail is insufficient.  *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1096 n.9 (D.C. Cir. 2008) (stating that "regular" telephone calls to the District are insufficient to establish jurisdiction under section (a)(4)); *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983) (holding that telephone calls into the District, regardless of their frequency, do not constitute persistent conduct "*in the District*").  Moreover, FutureGen undermines its argument by stating in its own memorandum that Carter "engaged in [the] persistent course of conduct . . . from the state of Illinois."  Pl.'s Mem. at 5.  Given Carter's absence from the District, his communications with those here cannot constitute a course of conduct in the District for the purposes of establishing jurisdiction under section (a)(4).

Thus, Carter's three trips to D.C. constitute the only conduct that occurred in the District. However, these trips were too irregular and isolated to constitute a persistent course of conduct under section (a)(4).  *See Crane v. Carr*¸ 814 F.2d 758, 763 (D.C. Cir. 1987) (explaining that section (a)(4) is meant to "filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum"); *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 47–48 (D.D.C. 2010) (finding that three trips to solicit business in the District did not constitute a persistent course of conduct under section (a)(4)).

Accordingly, the Court finds that there is no basis for personal jurisdiction over Carter under sections (a)(3) or (a)(4) of the District of Columbia long-arm statute.

## CONCLUSION

The Court will therefore grant Carter's motion to dismiss for lack of personal jurisdiction [Dkt. # 29] under Federal Rule of Civil Procedure 12(b)(2).  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: January 15, 2013